Below is an Opinion of the Court.

*Randall L. Dunn*
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

|  |  |  |
|---|---|---|
| In Re: | ) | Bankruptcy Case |
|  | ) | No. 09-31219-rld13 |
| PATRICIA JIMMY SUE WISHON, | ) |  |
|  | ) | MEMORANDUM OPINION |
| Debtor. | ) |  |

On July 17, 2009, I heard evidence and argument at the final evidentiary hearing (the "Hearing") on 1) the Court's Order to Show Cause why this bankruptcy case should not be dismissed as an abuse, with a 180-day bar to refiling, and 2) the debtor's Emergency Motion to Reinstate of [sic] Stay Regarding Homestead ("Motion to Reinstate Stay"). The debtor, Ms. Patricia Jimmy Sue Wishon ("Ms. Wishon"), and Katrina E. Glogowski, Esq. ("Ms. Glogowski"), counsel appearing for JP Morgan Chase Bank, NA (the "Bank"), both testified and argued at the Hearing. At the conclusion of the Hearing, I ordered a transcript and took the matters under submission.

In deciding these contested matters, I have considered carefully the testimony presented and exhibits admitted at the Hearing, as well as the arguments presented orally. I further have taken judicial

Page 1 - MEMORANDUM OPINION

notice of the docket and documents filed in Ms. Wishon's chapter 13[1]
case, Case No. 09-31219, as well as the docket and documents filed in Ms.
Wishon's prior chapter 11 case, Case No. 07-30869, for the purposes of
confirming and ascertaining facts not reasonably in dispute. Federal
Rule of Evidence 201; In re Butts, 350 B.R. 12, 14 n.1 (Bankr. E.D. Pa.
2006). In addition, I have reviewed applicable legal authorities. In
light of that consideration and review, this Memorandum Opinion sets
forth the Court's findings of fact and conclusions of law under Federal
Rule of Civil Procedure 52(a), applicable with respect to these contested
matters under Federal Rules of Bankruptcy Procedure 9014 and 7052.

## Factual Background

This is not Ms. Wishon's first bankruptcy case. In fact, Ms.
Wishon apparently is no stranger to legal proceedings. She testified at
the hearing that, "I've been in and out of court since '02, '03."
Transcript of July 17, 2009 Hearing ("Hearing Transcript"), Docket
No. 59[2], at 6.

Ms. Wishon filed a chapter 11 case pro se on March 14, 2007,
Case No. 07-30869. In her chapter 11 petition, she stated her address as
15959 Jackpine Loop, LaPine, Oregon 97739. Case No. 07-30869 Docket
No. 2, at 1. On April 4, 2007, Ms. Wishon filed a change of address
indicating that her address was changed to P.O. Box 648, LaPine, Oregon

---

[1] Unless otherwise indicated, all chapter, section and rule
references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the
Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Unless otherwise indicated, all "Docket No." references are to the
docket in Ms. Wishon's pending chapter 13 case, Case No. 09-31219.

Page 2 - MEMORANDUM OPINION

97739.  Case No. 07-30869 Docket No. 19, at 1.  That case was dismissed on the United States Trustee's motion for cause by order entered on July 13, 2007.  Case No. 07-30869 Docket No. 94.  Thereafter, Ms. Wishon moved to reopen her chapter 11 case on August 29, 2007.  Case No. 07-30869 Docket No. 96.  Her motion to reopen was denied by order entered on August 30, 2007.  Case No. 07-30869 Docket No. 99.  Ms. Wishon did not appeal the dismissal of her chapter 11 case.

Ms. Wishon filed the current case as a chapter 7 case on February 27, 2009, stating her address as 15959 Jackpine Loop, LaPine, Oregon 97739.  Docket No. 1, at 1.  The Bank purchased the 15959 Jackpine Loop, LaPine, Oregon property (the "Property"), on which Ms. Wishon resided, at a nonjudicial foreclosure sale conducted on January 16, 2009 and recorded a Trustee's Deed with respect to the Property on January 20, 2009.  See Exhibit 1, at 1-2.  Ms. Glogowski testified at the Hearing that, "Ms. Wishon, and others accompanying Ms. Wishon, were present at [the foreclosure] sale," but no litigation was commenced by Ms. Wishon or anyone on her behalf to block the foreclosure sale.  Hearing Transcript, Docket No. 59, at 27-28.

On or about January 29, 2009, the Bank filed an unlawful detainer action (the "First Unlawful Detainer Action") in Deschutes County Circuit Court ("Circuit Court") to obtain possession of the Property.  Declaration of Ms. Glogowski, Docket No. 39, at 1.  Following a trial in the First Unlawful Detainer Action, the Circuit Court issued a Notice of Restitution that required Ms. Wishon to vacate the Property.  Id.  The Circuit Court's Notice of Restitution in the First Unlawful Detainer Action apparently precipitated Ms. Wishon's current bankruptcy

Page 3 - MEMORANDUM OPINION

filing.

Ms. Wishon initiated this case by filing her chapter 7 bankruptcy petition without filing schedules, a statement of financial affairs or a Statement of Current Monthly Income. By order entered on February 27, 2009, the Court required Ms. Wishon to file her chapter 7 schedules, statement of financial affairs and a Statement of Current Monthly Income within 15 days following the case filing date. See Docket No. 6. The § 341(a) meeting of creditors in Ms. Wishon's case was scheduled for April 7, 2009 at 12:30 p.m. See Docket No. 7. Ms. Wishon never filed her chapter 7 schedules, statement of financial affairs or Statement of Current Monthly Income.

On March 30, 2009, the chapter 7 trustee filed a request that Ms. Wishon's chapter 7 case not be dismissed in spite of her failure to file required documents because the trustee had determined that there might be assets available for administration. See Docket No. 16. The trustee's request was set for a telephone hearing on April 29, 2009 at 10:00 a.m. See Docket No. 19.

On April 1, 2009, the Bank filed a motion for relief from stay ("Motion for RFS") to evict Ms. Wishon from the Property. See Docket No. 17. The Motion for RFS was served on Ms. Wishon at the Property address, which was the address she stated in her bankruptcy petition. Ms. Wishon did not file a response to the Motion for RFS. A default order granting the requested relief was entered on April 23, 2009. See Docket No. 26. Notice of entry of the order granting the Motion for RFS was mailed to Ms. Wishon at the Property address. See Docket No. 28.

On April 3, 2009, Ms. Wishon filed a motion to convert her

Page 4 - MEMORANDUM OPINION

bankruptcy case to chapter 13.  In her motion, Ms. Wishon stated her
address as P.O. Box 648, LaPine, Oregon 97739.  <u>See</u> Docket No. 20.  Her
motion was granted, and her case was converted to chapter 13 by order
entered on the same day.  The conversion order required Ms. Wishon to
file chapter 13 schedules, a statement of financial affairs, a Statement
of Current Monthly Income on Form B22C and a chapter 13 plan within 15
days following the date of entry of the conversion order.  <u>See</u> Docket No.
22.  The § 341(a) meeting in Ms. Wishon's chapter 13 case was scheduled
for May 8, 2009 at 2:30 p.m.  <u>See</u> Docket No. 25.  Notices of both the
conversion order and the § 341(a) meeting date were mailed to Ms. Wishon
at the Property address.  <u>See</u> Docket Nos. 24 and 27.

        On April 29, 2009, I held a hearing on the chapter 7 trustee's
request not to dismiss Ms. Wishon's bankruptcy case.  Only counsel for
the chapter 13 trustee appeared at the hearing.  The record of
proceedings reflects that if Ms. Wishon did not file the required chapter
13 documents, the case would be returned to me for further disposition.
<u>See</u> Docket No. 29.

        On May 6, 2009, the Court scheduled a further hearing for
June 12, 2009 at 11:30 a.m. on the chapter 7 trustee's request that Ms.
Wishon's bankruptcy case not be dismissed for failure to file documents.
<u>See</u> Docket No. 30.  Notice of the hearing was served on Ms. Wishon at the
Property address.  <u>See</u> Docket No. 31.

        On May 8, 2009, the chapter 13 trustee filed a motion to
reconvert Ms. Wishon's bankruptcy case to chapter 7 because she failed to
appear at the § 341(a) meeting.  <u>See</u> Docket No. 30.  A hearing on the
chapter 13 trustee's motion to reconvert was scheduled for June 12, 2009

Page 5 - MEMORANDUM OPINION

at 11:30 a.m.  Again, notice of the hearing was served on Ms. Wishon at the Property address.  See Docket Nos. 33 and 35.

On May 27, 2009, the chapter 7 trustee withdrew his request that Ms. Wishon's bankruptcy case not be dismissed because he determined that there were no assets available for a meaningful distribution to unsecured creditors.  See Docket No. 36.

On June 10, 2009, Ms. Wishon filed a document titled "SECOND NOTICE FOR CHANGE OF ADDRESS," claiming that she previously had sent a notice of change of address to the Court on or about March 19, 2009, changing her address for notice purposes to P.O. Box 648, LaPine, Oregon 97739.  See Docket No. 37.  On the same date, she filed the Motion to Reinstate Stay, asserting that she never received notice of the Bank's Motion for RFS and requesting that the automatic stay in her bankruptcy case be reinstated so that she would not be evicted based on an intervening state court order.  See Docket No. 38.

On June 12, 2009, I held a preliminary hearing on the chapter 13 trustee's motion to reconvert Ms. Wishon's chapter 13 case to chapter 7.  Ms. Wishon and counsel for the chapter 13 trustee attended the hearing.  At the time of the hearing, Ms. Wishon still had not filed her chapter 13 schedules and statement of financial affairs, her Statement of Current Monthly Income or her chapter 13 plan.  I advised the parties at the hearing that I would enter the Order to Show Cause and would set Ms. Wishon's Motion to Reinstate Stay for an evidentiary hearing.  See Docket No. 41.  The Hearing was scheduled for July 17, 2009 at 1:00 p.m.  See Docket No. 42.  The Order to Show Cause was entered on June 22, 2009.  See Docket No. 45.

Page 6 - MEMORANDUM OPINION

On June 15, 2009, Ms. Glogowski filed her Declaration in behalf of the Bank, asserting that following the entry of the Court's order granting the Motion for RFS, the Bank filed a second unlawful detainer action (the "Second Unlawful Detainer Action") in the Circuit Court.  She further stated that, "Following a full trial, in which Ms. Wishon was present, presented evidence, and called witnesses, the [Circuit Court] again granted possession of the Property to the [Bank] on June 5, 2009." Declaration of Katrina E. Glogowski ("Glogowski Declaration"), Docket No. 39, at 2.  She further asserted that a Notice of Restitution was issued in the Second Unlawful Detainer Action on or about June 8, 2009. Ms. Glogowski declared that Ms. Wishon raised issues as to lack of knowledge of the order granting the Bank's Motion for RFS and disputing ownership of the Property before the Circuit Court in the Second Unlawful Detainer Action and attached a copy of Ms. Wishon's Motion for Stay Pending Appeal and for Stay Pending Further Hearing and Order ("Motion for Stay Order"), raising the same issues, filed with the Circuit Court, to her Declaration.  Glogowski Declaration, Docket No. 39, at  2 and 4-12.

Ms. Wishon filed an opposing Declaration on June 22, 2009, asserting, among other things, that she owned the Property free of any claim of the Bank and attaching another copy of the Motion for Stay Order as Exhibit A.  See Declaration of Patricia Wishon, Docket No. 47, at 4 and 5-12.  On the same day, Ms. Wishon filed schedules and a statement of financial affairs.  See Docket No. 46.  In her summary of schedules and Schedule A, Ms. Wishon states that she does not have any interest in any real property, and she does not claim a homestead exemption on her

Page 7 - MEMORANDUM OPINION

Schedule C, but she does list the Bank as a creditor in her Schedule F. See Docket No. 46, at 1, 3, 7 and 13. In her Schedule I, Ms. Wishon states her average monthly income is $363.56, and her average monthly expenses are $450.00, leaving a deficit each month of -$86.44. See Docket No. 46, at 19-20. Ms. Wishon signed the Declaration at the end of her schedules acknowledging that she had read them and that they were "true and correct to the best of my knowledge, information, and belief" under penalty of perjury. Docket No. 46, at 22. In her statement of financial affairs, likewise signed under penalty of perjury, Ms. Wishon stated that she had received no income, either from employment or operation of a business or from any other source, during the period of the calendar year immediately preceding her bankruptcy filing or for the two prior calendar years. Docket No. 46, at 23-24 and 33. On the same day, Ms. Wishon tendered for filing a chapter 13 plan form and a Statement of Current Monthly Income on Form B22C, but they were returned, as the forms she filed were blank. See Docket No. 48.

At the Hearing, Ms. Wishon, Ms. Glogowski and counsel for the chapter 13 trustee appeared. The Bank's Exhibit 1, a copy of its recorded Trustee's Deed for the Property, was admitted. Ms. Wishon submitted copies of an amended mailing matrix, a completed Statement of Current Monthly Income on Form B22C, a completed chapter 13 plan form, and a revised bankruptcy petition, schedules and statement of financial affairs, that were admitted as her Exhibit A. Ms. Wishon stated that she filed the Exhibit A documents with the Court on the Hearing date. Hearing Transcript, Docket No. 59, at 4. In fact, the Exhibit A documents were received at the Court on July 17, 2009, and Ms. Wishon's

Page 8 - MEMORANDUM OPINION

chapter 13 plan and Form B22C Statement of Current Monthly Income were docketed. See Docket Nos. 53 and 54. However, her revised bankruptcy petition, schedules and statement of financial affairs were returned by the clerk's staff because she did not tender the required $26.00 fee to amend the schedules, and it was not clear to the clerk's staff why she filed a complete petition packet. See Docket No. 55. Ms. Wishon has not subsequently filed her amended schedules and statement of financial affairs with the required fee.

In her revised schedules, Ms. Wishon now asserts that she owns real property valued at $9,356,000.00 that is unencumbered. See Exhibit A, Summary of Schedules, Schedule A and Schedule D. She asserts a homestead exemption claim in the Property, valuing it at $300,000. See Exhibit A, Schedule C. She still lists the Bank as an unsecured creditor in a disputed, but unspecified amount. See Exhibit A, Schedule F. She states her average monthly income as $427.63 and her average monthly expenses as $450.00, placing her in a deficit of -$22.37 each month. See Exhibit A, Schedules I and J. As with the schedules and statement of financial affairs previously filed with the Court, the Exhibit A schedules and statement of financial affairs are signed by Ms. Wishon as "true and correct to the best of my knowledge, information, and belief" under penalty of perjury. See Exhibit A, declarations concerning debtor's schedules and statement of financial affairs.

In her chapter 13 plan, Ms. Wishon proposes to pay $100 a month for 36 months, with her plan payments to begin on September 10, 2009, estimating that her unsecured creditors will receive a dividend of approximately 0% on their claims. See Exhibit A, Chapter 13 Plan dated

Page 9 - MEMORANDUM OPINION

06/13/09, and Docket No. 54, at 1 and 2.

At the Hearing, when asked if she had read her schedules after they were prepared, Ms. Wishon stated that, "I have kind of glanced through them a little bit, yes." Hearing Transcript, Docket No. 59, at 4.

Ms. Wishon testified as follows as to the substance of her argument in support of the Motion to Reinstate Stay: "I believe because of a problem with an address change that I had filed back in March was not posted with the bankruptcy court, I was not notified of anything going on in the bankruptcy until I was suddenly surprised during an eviction hearing that Ms. Glogowski had filed motions to lift the stay and was granted that." Hearing Transcript, Docket No. 59, at 7. Ms. Wishon testified that she had appealed the eviction judgment entered in the Second Unlawful Detainer Action. Hearing Transcript, Docket No. 59, at 10. She further testified that she had raised her issues as to ownership of the Property before the Circuit Court in the Second Unlawful Detainer Action. Hearing Transcript, Docket No. 59, at 11 and 12. She also stated that her motion for stay pending appeal before the Circuit Court had been denied. Hearing Transcript, Docket No. 59, at 14. She subsequently was evicted from the Property. Hearing Transcript, Docket No. 59, at 15.

Ms. Wishon also testified that she had no regular employment since 2003. Her sole source of income was "a little bit of income from some royalties that my deceased husband had left me through an inheritance." Hearing Transcript, Docket No. 59, at 16. She further admitted that her expenses exceeded her income. Hearing Transcript,

Page 10 - MEMORANDUM OPINION

Docket No. 59, at 35.   However, Ms. Wishon testified that she wanted the chapter 13 bankruptcy to continue because "I do have new evidence to present to probably some adversary proceeding in the future."  Hearing Transcript, Docket No. 59, at 19.

In presenting her case in behalf of the Bank, Ms. Glogowski noted that the Court's docket does not reflect any notice of change of address received from Ms. Wishon until "more than 60 days after the order granting [the Motion for RFS] was entered."  Hearing Transcript, Docket No. 59, at 23.  With respect to the Motion for RFS and the order granting it, Ms. Glogowski testified as follows:

> I did comply with the court rules concerning mailing of the notice, service of the notice.  I waited the statutory time period.  And in fact waited longer than the statutory time period, received no response, submitted my order, and proceeded in state court with the [Second Unlawful Detainer Action].

Hearing Transcript, Docket No. 59, at 24.

With respect to the trial in the Second Unlawful Detainer Action, Ms. Glogowski testified:

> Ms. Wishon had a full trial in which she had evidence, in which witnesses testified on her behalf, at which she was allowed great leeway by the state court to have every opportunity to present anything she thought was relevant in this matter, including the lack of knowledge of the order granting relief from stay, the disputed ownership of the [Property], and her assertion that I, myself, misled the court concerning the ownership of the [Property].  At trial court she lost on all of those issues.  And those issues once again are before the court of appeals.

Hearing Transcript, Docket No. 59, at 27.

Finally, with respect to the issue of Ms. Wishon's change of address, Ms. Glogowski testified as follows:

Page 11 - MEMORANDUM OPINION

> [S]he has lived [on the Property] basically her whole
> life and decides after I have started eviction
> proceedings, and after she had filed bankruptcy, to
> rent a PO Box without notifying anybody.  And I would
> like the court to take that into consideration.  That
> she didn't move.  She was still at her house.  She was
> at her house on April 1st when I mailed her the
> [Motion for RFS].  She was at her house on April 23rd
> when the order granting relief from stay was granted.
> She was at her house when the bankruptcy noticing
> center mailed her a copy of the order granting relief
> from stay.  It is not like she was not there.

Hearing Transcript, Docket No. 59, at 29-30.

Counsel for the chapter 13 trustee was present during the Hearing but took no position on the Court's Order to Show Cause.

At the close of the Hearing, I took the matters under submission.

## Jurisdiction

I have core jurisdiction to decide the issues presented by the Order to Show Cause and the Motion to Reinstate Stay under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (G) and (O).

## Issues

1) Should Ms. Wishon's current bankruptcy case continue as a case in chapter 13, or should it be dismissed, with or without a bar to refiling?

2) In light of entry of the Court's order granting the Motion for RFS on April 23, 2009, does the Court have the authority to grant the Motion to Reinstate Stay?

3) If the Court has authority to grant the Motion to Reinstate Stay, should the Motion to Reinstate Stay be granted based on the record?

## Discussion

A) Order to Show Cause

Page 12 - MEMORANDUM OPINION

Chapter 13 generally allows individual debtors with regular income to reorganize their financial affairs over a period of three to five years through a plan that includes the debtor's continuing covenants with his or her creditors and normally is funded by future income. 8 <u>Collier on Bankruptcy</u> ¶ 1300.02, at 1300-12 (15th ed. rev. 2009) ("Chapter 13 is designed to facilitate adjustments of all types of debts of individuals with regular income through extension and composition plans funded out of future income, under the protection of the court."). Although chapter 13 originally was conceived as a means for wage earners and salaried individuals, who could pay at least a portion of their debts over time, to obtain bankruptcy relief, the "regular income" requirement has been liberally interpreted to encompass debtors with virtually any source of income "so long as there is available, after payment of necessary expenses, an amount sufficient to fund a plan."  1 Keith M. Lundin, <u>Chapter 13 Bankruptcy</u> § 2.1, at 2-1 (3d ed. 2007-1).  However, courts have held that debtors with inadequate income to pay their ordinary expenses are not eligible for chapter 13 relief.  <u>Id.</u> § 8.1, at 8-1, citing <u>In re Schauer</u>, No. 99-31918, 2000 WL 33792712, at *6-*7 (Bankr. D.N.D. Aug. 14, 2000); and <u>In re Smith</u>, 234 B.R. 852, 854 (Bankr. M.D. Ga. 1999).

The problems in this case start from Ms. Wishon's apparent lack of understanding that the benefits of bankruptcy carry some accompanying burdens.  Her current case was filed originally as a chapter 7 case, in an attempt to postpone and ultimately avoid the consequences of the judgment and Notice of Restitution entered by the Circuit Court in the First Unlawful Detainer Action.  Her case was commenced with a "bare"

Page 13 - MEMORANDUM OPINION

filing--she filed the bankruptcy petition and a statement confirming that she had obtained prepetition credit counseling, but she did not file schedules, a statement of financial affairs or a Statement of Current Monthly Income.

The Court issued an order on February 27, 2009, requiring Ms. Wishon to file her schedules, statement of financial affairs and Statement of Current Monthly Income within 15 days following the case filing date, approximately three weeks before she allegedly sent her first address change notice to the Court. Ms. Wishon ignored the Court's order. In fact, she never filed her chapter 7 schedules, statement of financial affairs and Statement of Current Monthly Income.

Following conversion of her bankruptcy case to chapter 13 on her motion, the Court issued a second order requiring the filing of schedules, a statement of financial affairs, a Statement of Current Monthly Income on Form B22C and a chapter 13 plan. The second order required Ms. Wishon to file the required documents within 15 days following the date of entry of the conversion order. She ignored that order too. She finally filed chapter 13 schedules and a statement of financial affairs that could be docketed on June 22, 2009, 63 days after the conversion order was entered. Although Ms. Wishon tendered for filing a Form B22C and a chapter 13 plan form as well at that time, they were returned by the Court unfiled because she attempted to file blank forms!

Ms. Wishon's initial schedules are patently inaccurate: This case is all about Ms. Wishon's claims that she has been wrongfully dispossessed of real property she owns. Yet, in her Schedule A, she does

Page 14 - MEMORANDUM OPINION

not claim to own <u>any</u> real property, and she does not claim a homestead exemption on her Schedule C.  Her Schedules I and J indicate that her expenses exceed her income by $86.44 every month, and in her statement of financial affairs, she states that she has had no income of any kind for the calendar year prior to her bankruptcy filing and for the two preceding calendar years.  She filed her schedules and statement of financial affairs as "true and correct to the best of my knowledge and belief" under penalty of perjury.  Yet, when asked at the Hearing if she had read her schedules before they were filed, she testified that, "I have kind of glanced through them a little bit, yes."  Hearing Transcript, Docket No. 59, at 4.

At the Hearing, Ms. Wishon presented amended forms of schedules and a statement of financial affairs, a Statement of Current Monthly Income on Form B22C and a completed plan form in her Exhibit A.  In her new Schedule A, she claims that she owns unencumbered real property valued at $9,356,000.00 and asserts a homestead exemption claim in the Property, valuing it at $300,000.  Her Schedules I and J still show a deficit of income versus expenses, and the same $455.00 of gross monthly income is shown on her Form B22C Statement of Current Monthly Income.  <u>See</u> Docket No. 53.  In her statement of financial affairs, she now indicates that she has received the same amount of income ($455.00) each month for the last three calendar years from a source(s) other than employment or business income.  Her completed plan form and Form B22C were accepted and docketed on the Hearing date, but her amended schedules and statement of financial affairs were stricken for, among other reasons, because she did not tender the $26.00 amendment fee.  She

Page 15 - MEMORANDUM OPINION

subsequently has not tendered the fee or resubmitted the amended
schedules and statement of financial affairs for filing.

The chapter 13 plan filed by Ms. Wishon reflects a fundamental
lack of understanding as to how chapter 13 works:  Generally, the first
plan payment is due in the first full month after a chapter 13 case is
filed or converted from chapter 7, as § 1322(a)(1) provides for the
commitment of all of the debtor's future income required to fund the
plan.  Ms. Wishon's plan provides that her first payment will be due on
September 10, 2009, over five months after her case was converted from
chapter 7.  Ms. Wishon proposes plan payments of $100.00 a month for 36
months, but she does not explain where the money to fund the plan will
come from, since her schedules reflect that she has no disposable income
available to fund a chapter 13 plan.  Her plan thus is not feasible for
purposes of § 1325(a)(6).  She further estimates that her unsecured
creditors will receive a distribution of approximately "0%" under her
plan, but § 1325(b)(4) requires that creditors receive at least as much
through a chapter 13 plan as they would receive from a liquidation of her
assets in chapter 7.  It is not clear from Ms. Wishon's schedules, either
as filed or as indicated on Exhibit A, what the total amount of allowed
claims is likely to be in her chapter 13 case.  However, since Ms. Wishon
now states that she owns unencumbered real property worth $9,356,000.00,
her total proposed plan payments of $3,600 will not even pay the $13,477
total claims she lists in Section 2(b)(2) of the plan plus administrative
expenses, let alone any other claims that might be allowed.  In light of
the value of assets she now claims, a confirmable chapter 13 plan in Ms.
Wishon's case most likely would require a minimum 100% dividend

Page 16 - MEMORANDUM OPINION

distribution to her creditors.  In other words, Ms. Wishon's chapter 13 plan is manifestly not confirmable under the requirements of the Bankruptcy Code, even if she had disposable income available to fund it.

Under § 109(g)(1), I am authorized to dismiss a chapter 13 case with a bar to refiling of up to 180 days "for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case...."  I find that it is appropriate to dismiss Ms. Wishon's chapter 13 case as an abuse with a 180-day bar to refiling for the following reasons.

Ms. Wishon filed this case on February 27, 2009 and disregarded two orders of the Court to file schedules, a statement of financial affairs and a Statement of Current Monthly Income.  She only filed schedules and a statement of financial affairs that were clearly, if not wildly inaccurate ten days following the preliminary hearing on the chapter 13 trustee's motion to reconvert her case to chapter 7, on the same date that the Order to Show Cause was issued.

Early and accurate debtor disclosures of their assets, liabilities and financial affairs are essential to allow the bankruptcy system to function equitably and effectively.

> [T]he very purpose of certain sections of the [Bankruptcy Code] is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.  The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction.  As we have stated, '[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure.'  Mascolo, 505 F.2d at 278.  Neither the trustee nor the creditors

Page 17 - MEMORANDUM OPINION

should be required to engage in a laborious tug-of-war
to drag the simple truth into the glare of daylight.
See in re Tabibian, 289 F.2d 793, 797 (2d Cir. 1961);
In re Shebel, 54 B.R. at 202.

Tully v. Boroff (In re Boroff), 818 F.2d 106, 110 (1st Cir. 1987).

When schedules and the statement of financial affairs are filed, the requirement that they be signed as "true and correct" under penalty of perjury mandates that they be prepared and reviewed carefully for accuracy: more than a cursory review is required. See, e.g., Hatton v. Spencer (In re Hatton), 204 B.R. 477, 483 (Bankr. E.D. Va. 1997) ("Courts...have stressed that the providing of false information under oath in a bankruptcy proceeding is not a matter to be taken lightly."); Mosley v. Sims (In re Sims), 148 B.R. 553, 557 (Bankr. E.D. Ark. 1992):

Willie Sims asserts that he merely "glanced over" the petition but "didn't really understand it." However, the Bankruptcy Code requires more than a "glance over" in reporting assets and transactions. Indeed, a mere "glance over" constitutes a cavalier and reckless disregard for truth which is inconsistent with the relief to be afforded the honest debtor.

When asked at the Hearing whether she had read her schedules prior to their being filed, Ms. Wishon, like Mr. Sims, testified that she merely "had glanced over them a little bit." She obviously did not grasp the significance of the requirement that her schedules and statement of financial affairs give an accurate picture of her assets, liabilities and financial transactions. Whatever Ms. Wishon understood about the information she was asked to provide in the schedules and statement of financial affairs that she filed with the Court, the completed schedules and statement of financial affairs that she did file are neither accurate nor credible.

Page 18 - MEMORANDUM OPINION

1   Ms. Wishon argues that the deficiencies in her filings should

2   be overlooked because she did not receive copies of Court orders and

3   filings due to her change of address, which was not received after she

4   mailed it on or about March 19, 2009.  Whether or not the address change

5   in fact was sent to the Court when Ms. Wishon says it was, a matter that

6   I will discuss at greater length later in this Memorandum Opinion, the

7   facts remain that the Court's order requiring Ms. Wishon to file her

8   chapter 7 schedules, statement of financial affairs and Statement of

9   Current Monthly Income was entered and sent to her weeks before the

10  purported address change, and in any event, it is the duty of the debtor,

11  whether represented or acting pro se, to monitor proceedings in a

12  bankruptcy case where he or she has invoked bankruptcy protection.

13  Delaney v. Alexander (In re Delaney), 29 F.3d 516, 518 (9th Cir. 1994);

14  Miyao v. Kuntz (In re Sweet Transfer & Storage, Inc.), 896 F.2d 1189,

15  1193 (9th Cir. 1990); Warrick v. Birdsell (In re Warrick), 278 B.R. 182,

16  187 (9th Cir. BAP 2002); Key Bar Investments, Inc. v. Cahn (In re Cahn),

17  188 B.R. 627, 632 (9th Cir. BAP 1995).  Ms. Wishon did not take any

18  action to keep her chapter 13 case alive until two days before the

19  preliminary hearing on the chapter 13 trustee's motion to reconvert her

20  case to chapter 7, approximately three and one-half months after her

21  bankruptcy case was filed and more than a month and a half after the

22  Bank's Motion for RFS had been granted.

23  Ms. Wishon's first chapter 13 plan was returned to her unfiled

24  because she attempted to file a blank plan form.  The plan she filed on

25  the day of the Hearing, over four and one-half months after her

26  bankruptcy case was filed, is not consistent with Bankruptcy Code

Page 19 - MEMORANDUM OPINION

requirements and is not feasible. Moreover, based on both sets of
schedules that Ms. Wishon has filed or attempted to file with the Court,
she does not have any disposable income to fund a chapter 13 plan.

In light of this record, why is Ms. Wishon here? The answer to
that question is provided through her testimony at the Hearing: Ms.
Wishon testified that she had "new evidence to present to probably some
adversary proceeding in the future." Hearing Transcript, Docket No. 59,
at 19. When asked if in the event I determined that it was inappropriate
to continue her case in chapter 13, should it be reconverted to
chapter 7, Ms. Wishon testified that, "I would hope we could stay in
chapter 13 because there are other issues in this." In other words, Ms.
Wishon's real goal in this case, brushing aside the requirements for a
debtor to proceed in chapter 13, is to open up a new battle line(s) in
her litigation wars. And she does not want to relinquish control of any
legal claims that she may have to a chapter 7 trustee.

I recognize that Ms. Wishon feels very strongly both that she
has been wronged and that she has been wrongfully dispossessed of her
property. However, right or wrong, her claims do not entitle her to
ignore court orders and make up the rules for proceeding in bankruptcy as
she sees fit. She has disregarded orders of this Court. She has filed
schedules and a statement of financial affairs that are materially
inaccurate in spite of her representations that they were true and
correct "under penalty of perjury." And her filings to date in this case
do not admit of the possibility that she ever could propose a feasible
plan in chapter 13. In light of these findings, I conclude that her
chapter 13 case is an abuse and should be dismissed with a 180-day bar to

Page 20 - MEMORANDUM OPINION

1  refiling any case in bankruptcy under § 109(g)(1).

2  B)  <u>Authority to grant a motion to reinstate the automatic stay</u>

3          On April 1, 2009, the Bank filed the Motion for RFS, seeking

4  relief from the automatic stay of § 362(a) to proceed with an unlawful

5  detainer action in the Circuit Court against Ms. Wishon, and the record

6  reflects that it was properly filed and served on Ms. Wishon at the

7  address she stated in her bankruptcy petition.  When Ms. Wishon did not

8  file a response to the Motion for RFS by the deadline, the Bank submitted

9  a default order granting the Motion for RFS, which the Court entered on

10  April 23, 2009.  Ms. Wishon did not file her Motion to Reinstate Stay

11  until June 10, 2009, weeks beyond the date when she could have appealed

12  the order granting the Motion for RFS.

13          The law in the Ninth Circuit generally is that once the

14  automatic stay of § 362 has been lifted, like Humpty Dumpty, it cannot be

15  "put back together again" or reinstated.  <u>See</u> <u>Canter v. Canter (in re</u>

16  <u>Canter)</u>, 299 F.3d 1150, 1155 n.1 (9th Cir. 2002):

17          Because the stay under § 362 is "automatic" and "self-
            executing" only upon the filing of a bankruptcy
18          petition, no authority exists for "reinstating" an
            automatic stay that has been lifted.  We have
19          expressly recognized that "the bankruptcy automatic
            stay is differentiated from a bankruptcy court-ordered
20          injunction, which issues under 11 U.S.C. § 105."
            <u>Andrieu v. Reno</u>, 223 F.3d 1111, 1121 n.4 (9th Cir.
21          2000).

22          As noted in <u>Canter</u>, once the § 362 stay has been lifted, that

23  is not necessarily the end of the game--the debtor can seek injunctive

24  relief pursuant to the bankruptcy court's authority under § 105(a).[3]

25          _____

26          [3]  Section 105(a) provides in relevant part as follows:
                                                      (continued...)

Page 21 - MEMORANDUM OPINION

*See, e.g.*, *Wedgewood Investment Fund, Ltd. v. Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Group, Ltd.)*, 878 F.2d 693, 700 (3d Cir. 1989); *In re Staff Investment Co.*, 146 B.R. 256, 260 n.7 (Bankr. E.D. Cal. 1993). However, procedurally, Rule 7001(7) requires that injunctive relief be sought through an adversary proceeding rather than by motion. *See, e.g.*, *Ramirez v. Whelan (In re Ramirez)*, 188 B.R. 413, 416 (9th Cir. BAP 1995) (Klein, J. concurring) ("In order to have a vacated stay 'reimposed,' one must ordinarily file an adversary proceeding seeking an injunction under 11 U.S.C. § 105.") (citations omitted); and *In re Staff Investment Co.*, 146 B.R. at 260 n.7. Ms. Wishon has not filed an adversary proceeding seeking injunctive relief in this case.

What Ms. Wishon did file was the Motion to Reinstate Stay. Although she cites no authority in her motion, I interpret the Motion to Reinstate Stay as a motion to relieve Ms. Wishon from a final order for excusable neglect under Federal Rule of Civil Procedure 60(b)(1), applicable in bankruptcy cases under Rule 9024.[4] A motion under Rule

---

[3](...continued)
The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

[4] Fed. R. Civ. P. 60(b)(1) provides:

On motion and just terms, the court may relieve a party...from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;....

I do not treat the Motion to Reinstate Stay as a motion to alter or amend a judgment as provided for in Federal Rule of Civil Procedure 59, applicable in bankruptcy cases under Rule 9023, because Ms. Wishon's motion was not filed within ten days following entry of the order on the
(continued...)

60(b)(1) may be made to vacate an order no more than one year following the date of entry of the subject order. Fed. R. Civ. P. 60(c)(1). The Motion to Reinstate Stay was filed well within that time limit.

In appropriate circumstances, Rule 60(b) provides a tool for federal courts to revisit a judgment or order that otherwise has become final. "Rule 60(b) [complements] the discretionary power that bankruptcy courts have as courts of equity 'to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders.'" <u>Zurich Am. Ins. Co. v. International Fibercom, Inc. (In re International Fibercom, Inc.)</u>, 503 F.3d 933, 940 (9th Cir. 2007) (citations omitted). Although there are no Ninth Circuit decisions directly on point, courts elsewhere have held that Rule 60(b) provides authority for a bankruptcy court to reconsider and vacate an order granting relief from stay and reinstate the automatic stay. <u>See, e.g.</u>, <u>State Bank v. Gledhill (In re Gledhill)</u>, 76 F.3d 1070, 1078-80 (10th Cir. 1996); <u>Camacho v. Doral Fin. Corp. (In re Camacho)</u>, 361 B.R. 294, 299-300 (1st Cir. BAP 2007). Rule 60(b) thus provides potential authority to support Ms. Wishon's Motion to Reinstate Stay. The question then becomes whether the record in this case supports granting the relief in terms of retroactive reinstatement of the stay applicable to the Bank's efforts to evict Ms. Wishon from the Property, that Ms. Wishon requests.

C) <u>Reinstatement of the stay is not appropriate in this case</u>

Ms. Wishon argues that I should vacate the order granting

_____

[4](...continued)
Bank's Motion for RFS, as required by Federal Rule of Civil Procedure 59(b).

Page 23 - MEMORANDUM OPINION

relief from stay to the Bank and reinstate the automatic stay retroactive to the date of the order granting the Motion for RFS because she did not receive notice of the Motion for RFS or the resulting order terminating the stay. She argues she is entitled to that relief because she mailed her change of address to the Court on or about March 19, 2009, but her change of address was not received by the Court, resulting in her not receiving documents and orders until after she filed her "SECOND NOTICE FOR CHANGE OF ADDRESS" on June 10, 2009. As noted above, I interpret Ms. Wishon's Motion to Reinstate Stay as arguing that the order granting the Motion for RFS should be vacated based on her excusable neglect in these circumstances under Rule 60(b)(1).

The framework for considering whether a party should be relieved from the effects of an order on the basis of "excusable neglect" was outlined by the Supreme Court in Pioneer Investment Services Co. v. Brunswick Assoc. Limited Partnership, 507 U.S. 380, 395 (1993):

> [W]e conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include...the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

In Briones v. Riviera Hotel & Casino, 116 F.3d 379, 382 (9th Cir. 1997), the Ninth Circuit held that the Pioneer Investment analytical framework applies in considering "excusable neglect" in the Rule 60(b)(1) context. Accordingly, I apply a "totality of the circumstances" analysis to determine if Ms. Wishon's failure to oppose the Bank's Motion for RFS is "excusable" neglect.

Page 24 - MEMORANDUM OPINION

At the outset, Ms. Wishon's failure to oppose the Motion for RFS was a product of her own neglect in failing to monitor the docket in her current bankruptcy case. As noted above, even though Ms. Wishon was acting pro se, she had a duty to monitor proceedings in her bankruptcy case--a duty which she disregarded, in spite of the fact that the Court sent her an order requiring her to file schedules, a statement of financial affairs and a Statement of Current Monthly Income by a deadline well in advance of her alleged address change. She should have known that her failure to comply with that order could have a substantial adverse impact on her, making it common sense to maintain contact with what was going on in her bankruptcy case.

Her excuse is that she sent a notice of change of address to the Court on or about March 19, 2009 that apparently was not received by the Court. Thereafter, until she filed her "SECOND NOTICE FOR CHANGE OF ADDRESS," she asserts that she did not receive Court filings, notices and orders, although the Court record does not reflect that any documents sent to Ms. Wishon at the Property address were returned. It was during this alleged lapse in receiving Court documents that the Motion for RFS was filed, and the order granting it was entered.

However, except for Ms. Wishon's fervently-held beliefs that she has been wrongfully deprived of her property and deserves additional opportunities to litigate her claims, I do not find her credible. Her lack of notice explanation is one way to view the facts in this case, but I can think of at least two others:

Ms. Wishon may have received the Bank's Motion for RFS and the order granting it without realizing their significance. Then, only when

Page 25 - MEMORANDUM OPINION

advised at the trial of the Second Unlawful Detainer Action that the order granting its Motion for RFS allowed the Bank to proceed with its efforts to have her evicted from the Property, did Ms. Wishon realize that she needed to try to have the order granting the Motion for RFS set aside.

A further scenario allows for the possibility that Ms. Wishon's address change was strategic. She may have arranged for an address change to the P.O. box for the purpose of having a denial of due process argument handy in the event that an order(s) was entered in her bankruptcy case that she disliked. Such a scenario would be far-fetched, except for the fact that Ms. Wishon's address change from the Property, where she continued to reside, to a P.O. box in this case follows exactly the same pattern as occurred in her prior chapter 11 case. See Case No. 07-30869 Docket Nos. 2 and 19.

All of these factual scenarios are possible, and particularly in light of Ms. Wishon's cavalier disregard for the truth in the schedules and statement of financial affairs that she originally filed with the Court, I cannot determine what actually happened, and I cannot determine if the Motion to Reinstate Stay was filed in good faith.

In terms of prejudice, there is no question that Ms. Wishon has been prejudiced by having to contest the Second Unlawful Detainer Action. She lost, and she now has been evicted from the Property, which I recognize is a personal tragedy for Ms. Wishon. However, was she "unfairly" prejudiced by the entry of the order granting the Motion for RFS? The Bank has presented evidence that it purchased the Property at a prepetition foreclosure sale that Ms. Wishon attended, and Ms. Wishon

Page 26 - MEMORANDUM OPINION

apparently did not file any litigation to stay the foreclosure sale. Following the foreclosure sale, the Bank obtained and recorded a Trustee's Deed (see Exhibit 1) that transferred title to the Property to the Bank. The Bank filed the First Unlawful Detainer Action to obtain an eviction order against Ms. Wishon. Ms. Wishon contested the First Unlawful Detainer Action at trial and lost. She filed this bankruptcy case after the Circuit Court issued a Notice of Restitution. If the Bank's Motion for RFS actually were litigated, it appears that the Bank has "cause" for relief from stay to be granted pursuant to § 362(d)(1), because all Ms. Wishon had at the time of her bankruptcy filing was a mere possessory interest in the Property.

In addition, the testimony of Ms. Wishon and Ms. Glogowski at the Hearing was consistent that Ms. Wishon was given the opportunity to present evidence and presented her case in support of her ownership claim to the Property at the trial of the Second Unlawful Detainer Action. The record before me reflects that all issues with respect to ownership of the Property arise under Oregon state law. Although Ms. Wishon lost again at the trial of the Second Unlawful Detainer Action, she has appealed the Second Unlawful Detainer Action judgment to the Oregon Court of Appeals, and that appeal has not been decided. In other words, she retains her remedies under state law.

In these circumstances, if I were to grant the Motion to Reinstate Stay and order the relief requested by Ms. Wishon, the Bank might have to file a new motion for relief from stay or to annul the stay, and the parties might have to try a third unlawful detainer action before the Circuit Court. Arguably, the only benefit to Ms. Wishon would

Page 27 - MEMORANDUM OPINION

be delay, at further substantial expense to the Bank.  And I would in
effect be voiding a final judgment of the Circuit Court, rendered after a
trial, adequate notice of which Ms. Wishon has not contested, and at
which Ms. Wishon was given a full opportunity to raise and present
evidence in support of her claims.

Based on this record, I ultimately conclude that Ms. Wishon has
not satisfied the Pioneer Investment standards for "excusable neglect"
that would justify my vacating the order granting the Bank's Motion for
RFS and reinstating the automatic stay of § 362 retroactive to April 23,
2009 under Rule 60(b)(1).

<u>Conclusion</u>

Based on the foregoing findings of fact and conclusions of law,
I will dismiss Ms. Wishon's current chapter 13 case as an abuse pursuant
to the Court's Order to Show Cause, with a 180-day bar to Ms. Wishon
refiling any further bankruptcy cases, and I will deny Ms. Wishon's
Motion to Reinstate Stay.  The Court will enter contemporaneously an
order consistent with the rulings in this Memorandum Opinion.

# # #


cc:     Patricia Jimmy Sue Wishon
        Katrina E. Glogowski
        Michael B. Batlan, Trustee
        Brian D. Lynch, Chapter 13 Trustee



Page 28 - MEMORANDUM OPINION